**UNITED STATES of America, Appellee,**

v.

**Dale M. PRESTON, a/k/a Jami Mansour Shabazz, Appellant.**

No. 89–5833.

United States Court of Appeals,
Third Circuit.

Argued Feb. 27, 1990.

Decided Aug. 3, 1990.

Rehearing and Rehearing In Banc Denied
Sept. 20, 1990.

James V. Wade (Argued), Harrisburg, Pa., for appellant.

Dennis C. Pfannenschmidt (Argued), Asst. U.S. Atty., U.S. Attorney's Office, Harrisburg, Pa., for appellee.

Before HIGGINBOTHAM, Chief Judge, HUTCHINSON and COWEN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Dale M. Preston (Preston) appeals from an enhanced sentence imposed under the Career Criminals Amendment Act of 1986 (Act), Subtitle I of the Anti-Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1402, 100 Stat. 3207–39 to –40 (1986), 18 U.S.C.A. § 924(e) (West Supp.1990). The Career Criminals Amendment Act—which amended the Armed Career Criminal Act of 1984, Pub.L. No. 98–473, ch. 18, 98 Stat. 2185 (1984), 18 U.S.C.A. § 1202, as recodified at 18 U.S.C.A. § 924(e) by the Firearm Owners' Protection Act of 1986, Pub.L. No. 99–308, § 104, 100 Stat. 458 (1986)—requires an enhanced sentence in convictions for possession of firearms when the defendant has three prior convictions for violent felonies. After convicting Preston for illegal possession of firearms by a felon, the government produced evidence of three prior felony convictions on his record.

On appeal, Preston contends that two of the three prior convictions introduced by the government cannot properly be used to enhance his sentence under the Career Criminals Amendment Act. He argues that one of the prior convictions, for criminal conspiracy to commit robbery, is not a "violent felony" under the Act. He argues that another of the prior convictions should not be considered because a potential conflict of interest in the 1971 proceedings that led to the conviction casts doubt upon whether he received effective assistance of counsel. Preston also argues that some, or all, of his prior convictions are now too stale to be considered during sentencing. Finally, Preston challenges the fine imposed by the district court after conviction.

We find no merit in any of Preston's arguments. Criminal conspiracy to commit robbery is a "violent felony" that can properly be counted for purposes of sentencing under the Career Criminals Amendment Act. Evidence of a potential conflict of interest is insufficient to support a claim of ineffective assistance of counsel made in collateral proceedings, and hence Preston's 1971 conviction can be considered in the absence of a showing of an actual conflict of interest in the earlier proceedings. The sentence enhancement language of the Career Criminals Amendment Act does not support Preston's staleness argument, and the fine that the district court imposed was reasonable and supported by the evidence. Therefore, we will affirm the district court's judgment of conviction and sentence.

## I.

While conducting surveillance of Preston's house in York, Pennsylvania, in early 1988 after receiving a tip that he was dealing in stolen goods, city police discovered that Preston was in possession of several firearms. Police confiscated five rifles after obtaining a search warrant for Preston's house. He was indicted for possessing the rifles in violation of 18 U.S.C.A. § 922(g) (West Supp.1990), which prohibits the possession of firearms by a convicted felon. After a jury trial, Preston was found guilty.

The United States government sought to have Preston's sentence enhanced under the Career Criminals Amendment Act, 18 U.S.C.A. § 924(e). Section 924(e)(1) provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court ... for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

*Id.* § 924(e)(1). The government filed an information listing three previous convictions Preston had received in Pennsylvania state courts in the 1970's: (1) a 1971 conviction in the York County Court of Common Pleas for robbery with an accomplice; (2) a 1977 conviction in the same court for resist-

ing arrest, disorderly conduct and aggravated assault on a police officer; and (3) a 1977 conviction in the Cumberland County Court of Common Pleas for criminal conspiracy to rob the Embers Motel and Restaurant.

During the 1971 criminal proceedings for robbery with an accomplice, Preston and his accomplice were not given separate representation. Instead, they both were represented by the same public defender. There was no written waiver of individual representation by the two defendants, nor is there any evidence in the court transcripts that this possible conflict of interest was discussed with them. After a jury trial, both defendants were found guilty.

The 1977 criminal conviction in the Cumberland County Court of Common Pleas resulted from a criminal conspiracy between Preston and another man to rob the Embers Motel and Restaurant. Shots were fired during the crime. Although Preston was not the armed robber, he was parked in a stolen car outside the Embers and was unlawfully carrying a firearm when the robbery took place. He was later arrested when he entered the Embers. A jury convicted Preston under Pennsylvania's conspiracy statute, 18 Pa.Cons.Stat.Ann. § 903 (Purdon 1983).

On October 2, 1989, the district court enhanced Preston's sentence under the Career Criminals Amendment Act because of the three prior convictions. It imposed a fifteen year sentence and fined Preston $2000. Preston then appealed his conviction and sentence to this Court.[1]

We have jurisdiction to hear Preston's appeal pursuant to 28 U.S.C.A. § 1291 (West Supp.1990) and 18 U.S.C.A. § 3742(a) (West 1985 & Supp.1990). The legal questions raised by Preston are subject to plenary review. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981). We review the fine imposed by the district court for reasonableness, while the court's associated factual findings are reviewed for clear error. *See* 18 U.S.C.A. § 3742(e) (West Supp.1990).

## II.

We first consider Preston's argument that his 1977 conviction in the Cumberland County Court of Common Pleas for criminal conspiracy to commit robbery should not be considered a "violent felony" under the Career Criminals Amendment Act. Preston urges us to adopt a categorical approach for determining what constitutes a "violent felony" under § 924(e). Under such an approach, he argues that his conspiracy conviction cannot be categorized as a violent felony since the use or threat of physical force is not invariably involved in this crime. He refers to the language of 18 Pa.Cons.Stat.Ann. § 903, Pennsylvania's criminal conspiracy statute,[2] and asserts that the use or threat of physical force is not specifically mentioned as an element of the crime of conspiracy. Nor, he argues, does criminal conspiracy necessarily involve conduct that presents a serious potential risk of physical injury to others. Thus, if we use his categorical approach for determining what crimes are "violent felonies" under § 924(e), he argues that

1. Although Preston's notice of appeal states that he is appealing from the district court's judgment of conviction and sentence, *see* Joint Appendix (App.) at 1, his arguments before this Court challenge only the enhanced sentence he was given under the Career Criminals Amendment Act.

2. This statute provides, in relevant part:
    (a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
    (1) agrees with such other person or persons that they or one or more of them will engage

in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

. . . . .

    (e) Overt act.—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.
18 Pa.Cons.Stat.Ann. § 903.

conspiracies should be excluded from consideration and his sentence should not be enhanced.

The government does not deny that a categorical approach should be used to determine what offenses may be considered "violent felonies" within the meaning of § 924(e). It does argue, however, that criminal conspiracy to commit robbery is a violent felony under § 924(e) and may be considered for the purpose of enhancing Preston's sentence under the Career Criminals Amendment Act. The government urges us to rely on the plain language of § 924(e), which defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another.

18 U.S.C.A. § 924(e)(2)(B).

■ We agree that a categorical approach must be used to determine which prior convictions may be considered by a sentencing court under the Career Criminals Amendment Act. All other federal appeals courts that have examined this issue have concluded that § 924(e) mandates looking at the fact of conviction and the statutory definitions of the prior offenses for which the defendant has been convicted, but not to the particular facts underlying those convictions. *See United States v. Taylor*, 882 F.2d 1018, 1023 (6th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990); *United States v. Dombrowski*, 877 F.2d 520, 527–28 (7th Cir.1989), *cert. denied*, —— U.S.

——, 110 S.Ct. 2592, 110 L.Ed.2d 272 (1990); *United States v. Leonard*, 868 F.2d 1393, 1395–97 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2585, 110 L.Ed.2d 266 (1990); *United States v. Sherbondy*, 865 F.2d 996, 1005–10 (9th Cir.1988); *United States v. Headspeth*, 852 F.2d 753, 758–59 (4th Cir.1988). When necessary, a sentencing court may refer to the relevant indictment or information papers and the jury instructions in the prior conviction along with the certified record of conviction, *see Taylor*, 882 F.2d at 1030 (using indictment to clear up uncertainty on record of conviction and to help determine the defendant's prior offense), but the inquiry should not extend beyond these documents.

The Supreme Court examined the language and legislative history of § 924(e) recently in *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and agreed with the reasoning of these earlier pro-categorical cases. *See id.*, 110 S.Ct. at 2160 ("We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense."). As the Court noted, "[t]here was considerable debate over what kinds of offenses to include [in the language of the Career Criminals Amendment Act] and how to define them, but no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." *Id.* at 2159. Since Congress made no mention of a more elaborate case-by-case, fact-specific approach, and since the Court recognized the practical difficulties and potential unfairness of such an approach,[3] the Court concluded that a categorical approach was

---

**3.** The Court noted that a case-by-case, fact-specific approach to determining "violent felonies" under § 924(e) could force sentencing courts to hold mini-trials, hear evidence and witnesses and otherwise engage in a detailed examination of the specific facts involved in the prior offenses. *See Taylor*, 110 S.Ct. at 2159–60. This would be avoided with a categorical approach under § 924(e). Thus, the Supreme Court in

*Taylor* makes it clear that any analogy between § 924(e) and former sentencing guideline § 4B1.2, which we have held supported a case-by-case approach to determine "crimes of violence" in *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990), would be improper.

appropriate when sentencing under § 924(e).[4]

■ Thus, we must determine whether Preston's conviction for criminal conspiracy to commit robbery fits within a category of crimes that are included within the Career Criminals Amendment Act. After examining this issue, we hold that Preston's conviction for criminal conspiracy to commit robbery is a "violent felony" within the meaning of § 924(e)(2)(B)(i).

■ For criminal conspiracy convictions in Pennsylvania, the prosecution must show that a specific crime was the object of the conspiracy. *See, e.g., Commonwealth v. Smith,* 289 Pa.Super. 356, 433 A.2d 489, 494 (1981) ("The heart of the offense of conspiracy is an agreement to do an unlawful act."); *Commonwealth v. Anderson,* 265 Pa.Super. 494, 402 A.2d 546, 549 (1979) (essence of criminal conspiracy is a common understanding that a particular criminal objective be accomplished). Based on these authorities, we believe Pennsylvania law requires that the crime that was the object of the conspiracy be defined for the jury.[5] Thus, the elements of criminal conspiracy to commit robbery, of which Pres-

ton was convicted, subsume the elements of robbery, which is a violent felony for purposes of § 924(e). *See United States v. Palmer,* 871 F.2d 1202, 1204 (3d Cir.) (defendant's federal conviction for attempted bank robbery "clearly" was a violent felony for purposes of § 924(e)), *cert. denied,* —— U.S. ——, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *United States v. Dickerson,* 901 F.2d 579, 584 (7th Cir.1990) (violation of state robbery statute *per se* constitutes a violent felony for purposes of § 924(e)).[6]

. Although Pennsylvania's conspiracy statute does not explicitly include as an element "the use, attempted use, or threatened use of physical force against the person of another," that element necessarily must be proven to support a conviction for conspiracy to commit a violent felony. Since the Supreme Court in *Taylor* has determined that a sentencing court can go beyond the fact of conviction and the defined elements of a non-generic burglary statute "in a narrow range of cases where a jury was actually required to find all the elements of a generic burglary," 110 S.Ct. at 2160, we think that a sentencing court can go beyond the general elements of

---

**4.** In determining whether the defendant's prior convictions for second-degree burglary under Missouri law constituted "violent felonies," the Court in *Taylor* concluded that a sentencing court could look beyond the mere fact of conviction and the statutory definition of the prior offense "in a narrow range of cases where a jury was actually required to find all the elements of a generic burglary [included within § 924(e)(2)(B)(ii) ]." *Taylor,* 110 S.Ct. at 2160.

As an example, the Court hypothesized to a situation where a defendant was convicted under a burglary statute that criminalized entry of an automobile as well as entry of a building. The Court explained that in this situation, if the indictment or information and the jury instructions show that the defendant was charged only with burglary of a building, and the jury necessarily had to find an entry of a building to convict, then this prior conviction could be used for sentence enhancement under § 924(e).

Thus, the Court held that "an offense constitutes 'burglary' for purposes of § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.*

**5.** Pennsylvania Standard Criminal Jury Instruction 12.903A expressly states that where the defendant is charged with criminal conspiracy, the trial judge should define the object of the conspiracy in instructing the jury. Although these standard instructions have not been approved or required by the Pennsylvania Supreme Court, they are in accord with the cases setting forth such definition as a requirement of Pennsylvania law.

**6.** Under the current version of § 4B1.2 of the federal sentencing guidelines, which is based on § 924(e)'s definition of "violent felonies," *see* U.S. Sentencing Guidelines, app. C, amend. 268, at C. 139 (Nov., 1989 ed.), "crimes of violence" include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. *See* U.S.S.G. § 4B1.2, commentary at n. 1. Since robbery is specifically listed as a crime of violence, *see id.,* commentary at n. 2, conspiring to commit robbery would be considered a "crime of violence" under the current sentencing guidelines. Although we are construing § 924(e) itself, and not a guideline section based on it, the sentencing guidelines approach adds support to our holding that "violent felonies" under § 924(e) include conspiracies to commit robbery.

criminal conspiracy in situations such as this where the jury was required to find that a violent felony was the object of the conspiracy. When presented with a prior conviction for conspiracy, a sentencing court can determine the object of the conspiracy from the certified record of conviction, the charging papers and any relevant jury instructions. This narrowly circumscribed examination of the record will allow the court to categorize the prior conspiracy conviction for purposes of sentencing under § 924(e).[7]

Here, it is undisputed that Preston's 1977 conviction in the Cumberland County Court of Common Pleas was for criminal conspiracy to commit robbery. The information papers filed in the trial court plainly show this charge. *See* Joint Appendix (App.) at 191. Since Preston was convicted of conspiracy to commit a violent felony, the use or threat of physical force was a part of his prior conviction for this crime. Accordingly, that conviction was a conviction for a "violent felony" within the meaning of § 924(e)(2)(B)(i).[8] As such, the prior conviction for conspiracy to commit robbery could be used to enhance Preston's sentence under the Career Criminals Amendment Act.

### III.

■ Next, we consider Preston's challenge to the use of his 1971 robbery conviction in the York County Court of Common Pleas in enhancing his sentence under the Career Criminals Amendment Act. A potential conflict of interest arose in those proceedings, since both Preston and his accomplice were represented by the same public defender. It does not appear that

Preston waived individual representation during the 1971 proceedings or was informed about the potential conflict of interest. Preston claims that this potential conflict of interest creates a doubt about whether he received effective assistance of counsel from his public defender during the 1971 proceedings.

Preston analogizes his case to Supreme Court decisions arising in the aftermath of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). In *Tucker,* the Supreme Court remanded a case to the sentencing court for reconsideration because that court, during sentencing, had explicitly considered two prior convictions that were obtained in violation of *Gideon. See* 404 U.S. at 447–49, 92 S.Ct. at 591–93. *Burgett* held that where the record is silent as to whether certain rights to representation were waived during earlier proceedings, there is a presumption that the prior convictions are invalid. *See* 389 U.S. at 114–15, 88 S.Ct. at 261–62. Preston argues that his 1971 conviction should also be presumed invalid, since there is no evidence in the certified records that he had waived individual representation. According to him, this potential conflict of interest should have prohibited the district court from considering the 1971 conviction during sentencing in the absence of a showing that the conviction was constitutionally obtained.

The government does not argue that there was no potential conflict of interest

---

7. Our holding does not conflict with § 924(e)'s preference for a categorical approach, because under the Pennsylvania conspiracy statute, as interpreted by courts of that state, conspiracies to commit violent felonies will be categorically included within the meaning of "violent felonies," while other types of conspiracies will be categorically excluded.

8. It is arguable that Preston's prior conviction may also be considered a "violent felony" within the meaning of § 924(e)(2)(B)(ii). Criminal conspiracies to commit robbery, as aptly demonstrated by the events surrounding the 1977 conspiracy involving Preston, present inherent

and serious potential risks of physical injury to others. Thus, such convictions would appear to be included within subsection (ii), because they otherwise involve conduct that presents a serious potential risk of physical injury to another. However, because Congress may have intended to limit subsection (ii) to property crimes, *see Taylor,* 110 S.Ct. at 2153, and because we hold that Preston's conviction fits within the meaning of § 924(e)(2)(B)(i), we do not reach the question of whether Preston's conspiracy conviction is a "violent felony" within the meaning of § 924(e)(2)(B)(ii).

during Preston's 1971 criminal proceedings. However, it contends that the post–*Gideon* cases cited by Preston are inapposite, because an actual conflict must be shown before a prior conviction may not be considered under the Career Criminals Amendment Act. The government relies on *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In that case, the Supreme Court held that a criminal defendant must show an actual conflict of interest that adversely affected his counsel's performance in order to make out a claim for ineffective assistance of counsel under the Sixth Amendment in a collateral proceeding. By analogy, the government asserts that a similar showing should be required to prohibit the use of a prior conviction under § 924(e).

In *Cuyler*, the Supreme Court held that a state prisoner could not obtain federal habeas corpus relief under 28 U.S.C.A. § 2254 merely by showing that his defense counsel represented potentially conflicting interests. Thus, the Supreme Court vacated our earlier judgment in the same case, where we had held that a criminal defendant was entitled to reversal of his conviction whenever he makes "'some showing of a possible conflict of interest or prejudice, however remote....'" *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512, 519 (3d Cir.1979) (quoting *Walker v. United States*, 422 F.2d 374, 375 (3d Cir.) (per curiam), *cert. denied*, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970)).

The Supreme Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718. Although "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," *id.* at 349–50, the Court held that "the possibility of conflict is insufficient to impugn a criminal conviction." *Id.* at 350, 100 S.Ct. at 1719. Moreover, the Court held that unless it can be shown that the trial court knew or reasonably should have known that a particular conflict of interest existed, the Sixth Amendment imposes no affirmative duty on the court to inquire into the propriety of multiple representation. *See id.* at 347–48, 100 S.Ct. at 1717–18.[9]

Thus, *Cuyler* makes it clear that if Preston were challenging his 1971 conviction in a habeas proceeding, he would have to show some actual conflict of interest that adversely affected his counsel's performance in order to prevail. *See Sullivan v. Cuyler*, 723 F.2d 1077, 1085–86 (3d Cir. 1983). Since we are also presented with a collateral challenge to an earlier conviction, we think that a similar standard should be used to judge whether a prior conviction can be used to enhance a sentence under the Career Criminals Amendment Act. *See United States v. Clawson*, 831 F.2d 909, 915 (9th Cir.1987) (using *Cuyler* standard to resolve ineffective assistance of counsel claim concerning a prior conviction that was to be used for sentence enhancement under 18 U.S.C.A. § 1202(a), the predecessor to 18 U.S.C.A. § 924(e)), *cert. denied*, 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). Preston's analogy to the line of cases following *Gideon* is inapposite to his situation.

Under the standard announced in *Cuyler*, we hold that Preston's 1971 conviction for robbery with an accomplice can be used to enhance his sentence under the Career

---

**9.** Preston cites Federal Rule of Criminal Procedure 44(c) in support of his position that the district court should not have relied on his 1971 conviction since the trial court in York County did not inquire into the possibility of an actual conflict of interest. Rule 44(c) was added in 1979 to require federal trial courts to inquire promptly into situations where the same counsel represents two or more criminal defendants.

Rule 44(c) does not control this case. We note that the rule became effective eight years after Preston's 1971 conviction and that it applies only to federal trial courts. Moreover, the Supreme Court explicitly considered the effect of Rule 44(c) in reaching its decision in *Cuyler*. *See* 446 U.S. at 346 n. 10, 100 S.Ct. at 1717 n. 10. Like *Cuyler*, this case involves a collateral challenge to an otherwise valid conviction and not a direct review of a trial court charged with determining a defendant's guilt or innocence in the presence of a potential conflict of interest.

Criminals Amendment Act. As the Ninth Circuit recognized in *Clawson*, "[t]here must be a showing that the attorney refrained from taking some appropriate action because of the conflict of interest." 831 F.2d at 915. Preston has not made such a showing here. He has not offered any evidence of an actual conflict of interest that adversely affected his counsel's performance during the 1971 proceedings, nor has he even alleged that any actual conflict of interest resulted from the joint representation. At least in the absence of a colorable claim of actual conflict, Preston's allegations of a potential conflict of interest are insufficient to prohibit his prior conviction from being considered under § 924(e).[10]

### IV.

Preston raises two additional issues that can be resolved rather quickly.

### A.

■■■■ Preston argues that his prior convictions are too stale to be considered for the purpose of sentence enhancement under the Career Criminals Amendment Act. This argument lacks merit under § 924(e)'s plain language. That section places no restriction on how recent prior convictions for violent felonies must be in order to be considered for enhancing a defendant's sentence under the Act, even though Congress obviously knew how to impose such a limitation. We are controlled by the language Congress chose. That language allows all prior convictions for violent felonies to be considered without regard to the date of conviction.

Our construction of § 924(e) poses no constitutional problem in this respect. Neither the Due Process Clause of the Fifth Amendment nor any other constitutional provision prohibits such a construction for sentencing purposes. Therefore, all three of Preston's prior convictions may be considered for purposes of enhancing his sentence under § 924(e).

### B.

■■■■ Preston's challenge to the fine that the district court imposed also lacks merit. Section 5E4.2 of the federal sentencing guidelines provides that a fine shall be imposed in all cases, except when the defendant establishes that he is unable to pay the fine required by the guidelines or when the fine would unduly burden the defendant's dependents. *See* U.S. Sentencing Guidelines § 5E4.2(a), (f).[11] The district court followed the recommendation in the presentence report and found that "the defendant has the ability to pay a fine at the lower end of the Guidelines." App. at 203. It assessed a fine of $2000, which was the minimum for this offense.

Preston says that his house in York, worth approximately $5000, is his only sig-

---

**10.** Preston's reliance on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), is misplaced. The situation in *Holloway* differed in important respects from Preston's situation. In *Holloway*, the defendants had made motions at trial for the appointment of separate counsel. Defense counsel had made such a recommendation to the defendants on the basis of confidential information he received from them. When the trial court denied these timely motions, the question became whether the defendants had been deprived of effective assistance of counsel by the court. The Supreme Court held that because the trial court had failed to hold a hearing or take other adequate steps to determine whether separate counsel was warranted, the defendants had been denied effective assistance of counsel. *See id.* at 484, 98 S.Ct. at 1178–79. The Court then held that the trial court's omissions constituted reversible error, and it remanded for a new trial. *See id.* at 488–91, 98 S.Ct. at 1180–82.

In Preston's case, however, no one objected to joint representation during the 1971 proceedings, nor has any evidence been offered suggesting the likelihood of an actual conflict of interest. Thus, his case is much closer to *Cuyler*, where the defendant merely alleged a potential conflict of interest. On this issue, the language in *Holloway* is consistent with the later holding in *Cuyler* and with our holding. In *Holloway*, the Supreme Court stated that joint representation "is not *per se* violative of constitutional guarantees of effective assistance of counsel." 435 U.S. at 482, 98 S.Ct. at 1178.

**11.** Effective November 1, 1989, § 5E4.2 of the guidelines was renumbered as § 5E1.2. The renumbered section makes no changes to § 5E4.2 that are relevant to our discussion.

**90**

nificant asset. He argues that he does not have the earning capacity to pay the fine and should not be forced to sell his residence to pay it.

The probation office, in its response to Preston's objections to the presentence report it had prepared for the district court, concluded that liquidating Preston's property to pay a fine is not likely to have an unduly severe impact on him or his dependents, because the dependents do not live at the home and Preston will have no need for the residence during his confinement. In addition, there is evidence that Preston had been living at least some of the time at his girlfriend's residence and that his house was primarily used for business purposes. We also note that Preston did not submit any countervailing evidence and failed to submit a financial statement to aid the court in sentencing, despite a request from the probation office. The evidence presented to the district court at sentencing supports the fine imposed.

Since Preston has not demonstrated that he is entitled to an exception under § 5E4.2, the district court committed no error in imposing a $2000 fine. On this record, we hold that the $2000 fine imposed on Preston·is supported by the evidence the district court considered and is reasonable under the guidelines.

### V.

For the foregoing reasons, we will affirm the district court's judgment of conviction and sentence.