**Moses VILLOT, Petitioner,**

v.

**Benjamin VARNER, et al., Respondent.**

**Civil Action No. 00–5512.**

United States District Court, E.D. Pennsylvania.

Nov. 29, 2006.

---

Defender Association Of Philadelphia, Federal Court Division, Michael Wiseman, Federal Defenders, Philadelphia, PA, for Petitioner.

Thomas W. Dolgenos, District Attorney's Office, Assistant District Attorney, Philadelphia, PA, for Respondent.

MEMORANDUM

ROBRENO, District Judge.

Before the Court is petitioner Moses Villot's habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Villot bases his § 2254 petition on three arguments: (1) plea counsel was ineffective for failing to interview Villot and to conduct an investigation prior to Villot's guilty plea hearing, (2) plea counsel coerced Villot into pleading guilty, and (3) plea counsel was ineffective because he had a conflict of interest in that he had previously defended one of the state's witnesses in an unrelated criminal proceeding. After addressing the merits of each of his claims, Villot will be denied habeas corpus relief under § 2254.

## I. PROCEDURAL HISTORY

On October 1, 1990, Petitioner Moses Villot pled guilty to a general murder charge in the Court of Common Pleas of Philadelphia County for shooting his brother-in-law in the head. Villot was sentenced the next day to life in prison after the sentencing judge found that Villot committed first degree murder. Subsequently, Villot moved to withdraw his guilty plea, which motion was denied. Villot appealed this result unsuccessfully to the Pennsylvania Superior Court and did not seek review in the Pennsylvania Supreme Court.

In January 1997, Villot petitioned for collateral relief in state court under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541, *et seq.* Thereafter, counsel appointed to represent Villot in his PCRA matter filed a "no merit" letter pursuant to *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988). Villot' s PCRA petition was subsequently dismissed by the PCRA court and counsel withdrew.

Villot was then granted the right to appeal denial of his PCRA petition *nunc pro tunc* by the Pennsylvania Superior Court. On appeal, Villot raised three ineffective assistance of counsel clams. The Superior Court held that these claims were "not cognizable" because Villot failed to assert his innocence, which is a prerequisite to seeking PCRA relief from a guilty plea pursuant to 42 Pa.C.S.A. § 9543(a)(2)(iii). Villot was denied permission to appeal this decision to the Pennsylvania Supreme Court on November 23, 1999.

On October 31, 2000 Villot filed a petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254 raising three arguments: (1) plea counsel was ineffective for failing to interview Villot and to conduct an investigation prior to Villot's guilty plea hearing, (2) plea counsel coerced Villot into pleading guilty, and (3) plea counsel was ineffective because he had a conflict of interest in that he had previously defended one of the state's witnesses in an unrelated criminal proceeding. Following the issuance of a Report and Recommendation by Magistrate Judge Peter B. Scuderi, this Court denied Villot's petition on February 15, 2001, finding that all three claims were procedurally defaulted.

Villot then sought and was granted a certificate of appealability from the Third Circuit Court of Appeals. He then appealed to that court. The Third Circuit reversed the judgment of this Court and remanded the case for consideration of the merits of all of Villot's claims, concluding that the innocence provision of § 9543(a)(2)(iii) was substantive and could not be the basis of a procedural default and that the conflict of interest claim was not procedurally defaulted because it was asserted in the PCRA petition. *See Villot v. Varner*, 373 F.3d 327 (3d Cir.2004) (reciting procedural history of case and decision to reverse).

Upon remand, the Court appointed counsel and directed the parties to brief the merits of Villot's claims. Briefing having been completed, Villot's habeas claims are now ripe for decision.

## II. DISCUSSION

### A. *Standard of Review*

■ The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth the standards for reviewing state court judgments in federal habeas petitions filed pursuant to 28 U.S.C. § 2254. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir.2000). The AEDPA increases the deference federal courts must give to the factual findings and legal determinations of state courts. *Id.* at 196 (citing *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir.1996)). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may be granted only when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or when the state court's decision was an "unreasonable determination of the facts" based on the evidence adduced at trial. 28 U.S.C. § 2254(d)(1)-(2); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir.2001). Factual determinations by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (clear and convincing standard in § 2254(e)(1) applies to factual issues).

The "clearly established Federal law" which governs ineffective assistance of counsel claims is the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Wiggins v. Smith*, 539

U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 363, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (stating that the *"Strickland* test qualifies as 'clearly established Federal law, as determined by the Supreme Court' "). In order to prevail on an ineffective assistance of counsel argument:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 56–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (applying *Strickland* test to petitioners that challenge the effectiveness of counsel after entry of guilty plea). This standard is highly demanding with a "strong presumption that the representation was professionally reasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ With the applicable standard of review as a backdrop, the Court will now address the merits of each of petitioner's ineffective assistance of counsel claims. While the petitioner raises three claims— (1) plea counsel was ineffective for failing to interview Villot and to conduct an investigation prior to Villot's guilty plea hearing, (2) plea counsel coerced Villot into pleading guilty, and (3) plea counsel was ineffective because he had a conflict of interest in that he had previously defended one of the state's witnesses in an unrelated criminal proceeding—the latter two are so closely intertwined that the Court finds it necessary to address them concurrently.[1]

---

1. In fact, it appears that Villot's claim that his plea counsel coerced him into pleading guilty is merely a variation on his conflict of interest claim. Villot does not explain the basis for the coercion argument, but "the gist of the claim that can be gleaned from Villot's *pro se* brief in the district court and the Magistrate Judge's report and recommendation" is that his plea counsel pressured him to plead guilty so that plea counsel was not forced to cross-examine Adam Romero, the state's witness and plea counsel's former client. *Villot v. Varner*, 373 F.3d at 335–36.

 Moreover, to the extent that this claim is simply that his plea was involuntarily given, the Superior Court noted that the record has "no support for [Villot's] contention that his plea was involuntary." *Commonwealth v. Villot*, Nos. 0744–0747, September Term, 1989 Nov. 25, 1992 at 4. On the contrary, at the state's evidentiary hearing, Villot presented his sister Maria as a witness. She testified as follows:

 Q. And in fact, you were here when your brother pleas [sic] guilty to these charges, is that right?
 A. Yes.
 Q. You were here that day?
 A. Yes.
 Q. And you discussed with your brother what he should do in this case; did you not?
 A. Yes.
 Q. And you talked about what he was going to do and you also discussed with him what he was going to do?
 A. Yes.
 Q. And he knew what was going to happen that day in terms of pleading guilty to murder?
 A. Yes. (N.T. 10/15/91 at 13).

 * * *

 Q. And you did speak with your brother about pleading guilty to murder generally, and it was his decision to do so?
 A. That was the lawyer's advice. We have to go by his advice. We don't know anything about the law in these cases.
 Q. But your brother understood that he was making that decision as well?
 A. Yes. (N.T. 10/15/91 at 15).

 Therefore, based on the information in the record, there is no evidence from which this Court can conclude that the Superior Court made an unreasonable determination of the facts when it rejected Villot's claim that his plea was involuntarily given. Accordingly, to

## B. *Villot's Ineffective Assistance Claim*

Villot argues that plea counsel was ineffective for a host of reasons, and this ineffectiveness caused him to enter an involuntary or unknowing guilty plea. A 2254 petitioner who claims ineffective assistance of counsel caused him to enter an involuntary or unknowing plea must establish "that (i) his or her counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases; and (ii) there is a reasonable probability that, but for counsel's errors, he or she would have proceeded to trial instead of pleading guilty." *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

█ The Court concludes that Villot has not demonstrated that plea counsel's conduct was ineffective in violation of the Sixth Amendment. Under the AEDPA, this Court's role is not to posit if it would have reached a different result "if left to [its] own devices," but rather to determine whether the state court's denial of Villot's ineffective assistance of counsel claims is either contrary to, or involved an objectively unreasonable application of, *Strickland*. *Outten v. Kearney*, 464 F.3d 401, 413–14 (3d Cir.2006) (citing *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir.2000)).

█ In evaluating Villot's ineffective assistance of counsel claim, the Pennsylvania Superior court did not cite *Strickland*, nor did it apply *Strickland's* two-pronged test. *Commonwealth v. Villot*, Nos. 0744–0747, September Term, 1989 Nov. 25, 1992 at 6. Instead, it articulated the following standard:

> In order to prevail on an ineffectiveness claim, appellant, must show that his underlying contention possesses arguable merit, that the course chosen by counsel had no reasonable bases designed to serve his interest, and that counsel's conduct prejudiced him. If the claim lacks merit, the inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless issue.

*Id.* (internal citations omitted).

Applying this standard, the court then concluded that it "had no alternative but to deny defendant's motion." *Id.*

It is settled in this circuit that the test used by the Pennsylvania court in determining ineffective assistance of counsel claims is not contrary to *Strickland*. *See Werts*, 228 F.3d at 204 (holding that Pennsylvania's test for ineffective assistance of counsel is not contrary to *Strickland*.) *See also Jacobs v. Horn*, 395 F.3d 92, 106 n. 9 (noting that Pennsylvania's test for ineffective assistance of counsel is not contrary to *Strickland* and addressing thereafter its application to the facts of the case).

█ Having determined that the state court's decision is not contrary to *Strickland*, "we are required to advance to the second step in the analysis—whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Outten v. Kearney*, 464 F.3d 401, 413–14 (3d Cir.2006) (citing *Werts*, 228 F.3d at 197). An "unreasonable application of" Supreme Court precedent occurs when "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Hackett v. Price*, 381 F.3d 281, 287 (3d Cir.2004).

The outcome decided by the Superior Court can reasonably be justified under

the extent that Villot's claim that he was coerced into pleading guilty is simply an involuntariness argument, it is denied. To the

extent that it is a variation of his conflict of interest claim, it will be discussed in section II.D. of the text.

the two-pronged test in *Strickland.* Each basis Villot asserts for his ineffective assistance claim will be discussed below in applying the *Strickland* standard.

### i. *Plea counsel's failure to investigate*

Villot claims that plea counsel failed to conduct a reasonable investigation, arguing that plea counsel not visit Villot in jail, did not take his phone calls, and failed to interview witnesses with information relevant to Villot's state of mind prior to his entry of the guilty plea.

 Villot fails to satisfy both prongs of *Strickland.* First, he has not shown that plea counsel's performance fell below an objective standard of reasonableness. Contrary to Villot's argument that plea counsel did not conduct a reasonable investigation, plea counsel kept a file with notes from interviews he conducted of various defense witnesses, including Villot himself. N.T. 10/2/91 at 22. Second, Villot has not satisfied the second prong of *Strickland* as it applies to ineffective assistance of counsel claims arising out of the guilty plea process because he has not shown that "but for counsel's errors, [Villot] would have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366. In fact, Villot admitted his own guilt, both during his guilty plea and in a confession to police after the incident. N.T. 10/2/90 at 32–33. Therefore, Villot has not satisfied *Strickland's* two pronged-test for ineffectiveness as it is applied to the guilty plea process.

### ii. *Plea counsel's failure to present ricochet theory*

 With respect to Villot's contentions that plea counsel "did not act as counsel" during the trial, for *inter alia,* failing to present the ricochet theory and/or failing to present Villot's account that he was trying to aim at the decedent's head, the record does not support such a contention.[2] On the contrary, plea counsel did act as such during the entry of plea and degree of guilt hearings. He presented witnesses, including members of Villot's family, in an attempt to show that Villot was provoked by the deceased's confrontation with Villot's mother. His "strategy" in this respect, was to furnish the court with some reasonable basis for which to find Villot guilty of the voluntary manslaughter, as opposed to first degree murder. This strategy is "virtually unchallengeable" on review. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Moreover, that the court chose to reject this theory and find Villot guilty of first degree murder does not render plea counsel's representation ineffective. The Court cannot find that plea counsel's representation fell below an objective standard of reasonableness demanded of attorneys in criminal cases in this respect.

### iii. *Plea counsel's failure to adequately communicate*

As one basis for Villot's ineffective assistance of counsel claim, Villot argues that plea counsel failed to adequately communi-

---

**2.** Villot contends that plea counsel's misunderstanding of Pennsylvania law resulted in his failure to pursue this defense. While it is true that plea counsel appears to have misunderstood Pennsylvania law—believing that because the bullet struck deceased in the head (a vital part of the body), that there was no possibility for less than first degree and the only hope was for a showing of "mercy"—plea counsel decided not to present an accidental shooting theory because such a theory was contrary to the evidence. Villot never alleged that the shooting was accidental and he told plea counsel that he deliberately shot the victim in the head. N.T. 10/2/91 at 44. Thus, despite plea counsel's apparent misunderstanding of Pennsylvania law, plea counsel's decision not to pursue the ricochet theory was a tactical decision that is "virtually unchallengeable" under *Strickland. Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052.

cate with him. This argument has two components: (1) that plea counsel did not meet with Villot in the eleven months preceding the entry of his guilty plea and (2) plea counsel did not utilize an interpreter when speaking with him. Pet.'s Mem. at 26–27. Neither claim satisfies the *Strickland* two-pronged test.

The fact that plea counsel did not meet with Villot for the eleven month period before the entry of the guilty plea is not necessarily inadequate communication. In this case, plea counsel had ample opportunity to meet and confer with Villot on at least five occasions when making appearances on Villot's behalf. On each of these occasions, plea counsel was able to confer with Villot in the Philadelphia City Hall cell room and in the courtroom itself. N.T. 10/2/91 at 14, 16. The record shows that plea counsel took advantage of such opportunities to communicate with Villot, discussing the case with him on several occasions, Villot's account of the crime and the defense options available to him. N.T. 10/2/91 at 15, 27–28, 33; N.T. 10/15/91 at 3–4. In addition, plea counsel communicated with Villot's sister frequently in the course of representing him, at times on a weekly basis. N.T. 10/2/91 at 18. Therefore, Villot has not shown that plea counsel's level of communication fell below an objective standard of reasonableness. Furthermore, Villot has not shown any resulting prejudice from plea counsel's failure to meet with him for eleven months before the entry of guilty plea. There was no new evidence discovered, nor any new plea offers to communicate during that time.

As to the component of the claim that alleges a language barrier that ren-

dered plea counsel's representation ineffective, Villot has also failed to satisfy *Strickland* in this respect. The Pennsylvania Superior Court determined, as a factual matter, that Villot had a "complete understanding" of the language.[3] This is not an unreasonable determination of the facts as adduced at the hearings. On the contrary, this finding is soundly supported by the evidence in the record. Villot provided a statement to police after the incident without the need for an interpreter. In addition, at the degree of guilt hearing, Villot took the stand himself and explained his actions without the use of an interpreter, and he responded appropriately and coherently to the questions posed. Further, although an interpreter was provided to him during the plea, Villot did not use his services. Therefore, the record shows that Villot clearly understood the English language well enough that the fact that plea counsel did not use an interpreter when communicating with him was not deficient.

Finally, with respect to all Villot's claims, Villot was afforded a full and adequate evidentiary hearing by the Pennsylvania Superior Court on his ineffective assistance of counsel claims and the decision of that court is fully supported by the record as a whole. *See U.S. ex rel Davis v. Johnson,* 495 F.2d 335, 342 (3d Cir. 1974). At that evidentiary hearing, Villot was given an opportunity to meet his burden of proof with respect to his ineffective assistance of counsel claims, yet failed to satisfy this burden.

There is nothing to show that the state court's decision to reject Villot's ineffective assistance of counsel's claim was in

---

**3.** In the opinion, Judge Stout wrote:
The defendant, although indicating that he read, wrote, and understood the English language, "[a] little bit," demonstrated to this Court throughout the colloquy, that he

had a complete understanding of the questions asked of him and responded appropriately.
*Commonwealth v. Villot,* September Term, 1989 (Nov. 25, 1992).

any way "contrary to" or an "unreasonable application of" clearly established Supreme Court law. Nor was the state court's decision based on an "unreasonable determination" of the facts presented. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (explaining how AEDPA modified habeas review). Therefore, Villot's claim for ineffective assistance of counsel based on the foregoing will be denied.[4]

### C. Villot's Ineffective Assistance Claim—Plea *Counsel's Alleged Conflict of Interest*

As with Villot's other claims of ineffective assistance of counsel, Villot's ineffective assistance of counsel claim based on his plea counsel's alleged conflict of interest also fails.

■ Where the alleged ineffective assistance arises from a conflict of interest, courts apply the test set forth in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In *Cuyler,* the Supreme Court held that a state prisoner cannot obtain habeas corpus relief pursuant to 28 U.S.C. § 2254 merely by showing that his defense counsel represented potentially conflicting interests. 446 U.S.

at 348, 100 S.Ct. 1708; *United States v. Preston,* 910 F.2d 81, 88 (3d Cir.1990). Instead, the petitioner must show some "actual conflict of interest that adversely affected his counsel's performance in order to prevail." *Preston,* 910 F.2d at 88.

■ An actual conflict of interest occurs "when, during the course of the representation, the attorney's and the defendant's interest 'diverge with respect to a material factual or legal issue or to a course of action.'" *Melendez v. Carroll,* No. 04–1537, 2006 WL 38921 (D.Del. Jan. 5, 2006) (citing *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993) and quoting *Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. 1708). "[A]n actual conflict is more likely to occur in cases of joint representation—representation of more than one defendant at the same trial—rather than simply multiple representation—representations of defendants in different trials." *United States v. Morelli,* 169 F.3d 798, 810 (3d Cir.1999).

Here, the Pennsylvania Superior Court properly applied *Cuyler* and rejected Villot's claim based on plea counsel's alleged conflict of interest. In this case, no actual conflict existed. Villot's plea counsel was not jointly representing Romero, but rath-

---

4. In his latest brief to this Court, Villot now asserts as a basis for his ineffective assistance of counsel claim that plea counsel failed to relate to Villot his true view of the "bleak assessment" of Villot's case. In other words, Villot was under the impression that he had a range of possible outcomes at degree of guilt hearing, but had he known plea counsel truly felt that Villot would receive nothing less than first degree, he would not have pled. Pet.'s Mem. at 30. To the extent to which this is an new claim, separate and distinct from his failure to communicate claim, it fails for two reasons. First, it is procedurally barred as it was not exhausted in state court (and a state remedy would be untimely). Second, it is time-barred under the § 2254 as it was not raised in his original filing six years ago. *See Mayle v. Felix,* 545 U.S. 644, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (amended habeas pe-

titions do not escape AEDPA's one-year time limit when asserting a new ground for relief that differs from those in original filing); *United States v. Duffus,* 174 F.3d 333, 338 (3d Cir.1999) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period.").

Villot also claims that he received nothing in consideration for his guilty plea. This claim simply has no merit. In exchange for his guilty plea to murder generally, the state promised, a promise which it later fulfilled, that it would not pursue the death penalty in the event that the court found Villot guilty of murder in the first degree. N.T. 10/1/90 at 5. This constituted adequate consideration for Villot's guilty plea.

er representing him in a wholly unrelated matter. In addition, upon discovering at Villot's preliminary hearing that he was representing Romero, a potential witness for the government, in another matter, plea counsel promptly notified the court at that time,[5] Villot and his family, and after Villot and his family agreed to his continued representation, promptly withdrew as counsel for Romero in the other matter.[6]

As for Villot's claim that plea counsel also represented or had previously represented the victim and/or his mother, plea counsel testified at the state evidentiary hearing that he had no recollection of ever having represented either the victim or his mother. N.T. 10/2/91 at 19. Gay's testimony was corroborated in this respect by Villot's own sister, Maria, who testified that Gay advised her that "he did not represent the deceased." N.T. 10/15/91 at 10. To rebut this testimony, however, Villot introduced a criminal extract for the deceased, on which Gay was listed as representing the deceased in a case in which he had failed to appear five (5) years earlier. In denying Villot's motion to withdraw his plea of guilty, the state court noted that this evidence "hardly shows that counsel 'actively represented conflicting interests.'" *Commonwealth v. Villot*, Nos. 0744–0747, September Term, 1989 Nov. 25, 1992.

Even assuming, *arguendo*, that an actual conflict existed in this case, Villot has not shown that it adversely affected his plea counsel's representation in any way. Perhaps most importantly, even after learning of the potential existence of a conflict, Villot and his family decided to continue with Gay's representation, as Maria Villot testified "we need a good lawyer, everybody told us he was one of the best, so we decide to stay with him."[7] N.T. 10/15/91 at 11.

Based on the evidence presented at the evidentiary hearings, the state court concluded that "[s]ince defendant bears the burden of demonstrating 'actual conflict' and the 'adverse affect of his lawyer's performance' his claim fails." *Commonwealth v. Villot*, Nos. 0744–0747, September Term, 1989 Nov. 25, 1992 at 9. This Court concludes that the state court's denial of Villot's ineffective assistance claim based on his plea counsel's alleged conflict of interest was neither contrary to nor an unreasonable application of established Federal law; nor was it an unreasonable determination of the facts as adduced. Therefore, Villot's claim is denied.

## III. CONCLUSION

Villot's habeas corpus petition is denied. The Pennsylvania Superior Court's decision in denying Villot's claims can be reasonably justified under the two-pronged test in *Strickland*, and thus was not "contrary to" or an "unreasonable application of" the clearly established Federal law with respect to ineffective assistance of

---

5. Plea counsel stated to the Honorable Judge Charles Margiotti at the preliminary hearing, "The young man that walked out of the room a moment ago, that Mr. Winter said is to be one of his witnesses, is a young man I know as Adam Romero whom I represent in another matter." N.T. 9/7/89 at 5.

6. At Villot's preliminary hearing, Gay discovered for the first time that a client of his, Adam Romero, was a potential witness for the Commonwealth. N.T. 10/2/91 at 20, 21 and N.T. 9/7/89 at 5. Gay testified, however, that

he informed Villot of this fact, offered to withdraw from the case and when Villot declined Gay's offer to withdraw from representing him, then withdrew from representing Romero. (10/2/91 at 19).

7. Maria Villot, Villot's sister, testified at the evidentiary hearing as follows:
Q. You decided after consulting with your family and your brother that you were going to continue to have him represent you; is that correct?
A. Yes. (N.T. 10/15/91 at 13)

counsel claims. Accordingly, Villot is not entitled to habeas relief.

### ORDER

**AND NOW,** this **29th** day of **November 2006,** it is hereby **ORDERED** that Moses Villot's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 is **DENIED.**

██ **IT IS FURTHER ORDERED** that there is no basis for a certificate of appealability.[8]

**IT IS FURTHER ORDERED** that the Clerk of Court shall mark this matter **CLOSED** for all purposes, including statistics.

**AND IT IS SO ORDERED.**

8. A prisoner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). No basis for a certificate of appealability exists in this case, as the petitioner is unable to meet this standard.