PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4294
_____

UNITED STATES OF AMERICA,

Appellant

v.

LEONARD GIBBS
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-10-cr-00029-001)
District Judge:  Honorable Gregory M. Sleet
_____

Argued July 14, 2011
Before:  SLOVITER, FUENTES
and FISHER, *Circuit Judges*.

(Filed: August 29, 2011 )

Kevin R. Gingras (Argued)
United States Department of Justice
Appellate Section
Suite 1264
950 Pennsylvania Avenue, N.W.
Washington, DC  20530

Keith M. Rosen
Office of United States Attorney
1007 North Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899
        *Counsel for Appellant*

Daniel I. Siegel (Argued)
Office of Federal Public Defender
800 King Street, Suite 200
Wilmington, DE  19801
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

The government brings this appeal challenging the District Court's ruling that a prior conviction for wearing body armor while committing a felony in violation of 11 Del. C. § 1449(a) is not a predicate offense under the Armed

2

Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). We hold that the body armor conviction is an ACCA predicate offense because it involved the possession of cocaine with intent to distribute. It is "a serious drug offense." 18 U.S.C. § 924(e)(1). We will vacate the ruling of the District Court and remand for sentencing in conformity with this opinion.

## I.

Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm. A person convicted under this section is subject to a fifteen-year sentence-enhancement provision:

(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

(2) As used in this subsection--

(A) the term "serious drug offense" means--

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

4

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; . . . .

18 U.S.C. § 924(e).

Leonard Gibbs was arrested for violating the conditions of his probation. In the course of arrest, the police discovered a loaded .357 caliber revolver with ammunition. He was charged with two counts: knowing possession of a firearm and knowing possession of ammunition after having been previously convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Gibbs pled guilty to the firearm count pursuant to a plea agreement, which stated that "[t]he maximum penalties for this offense are 10 years [of] imprisonment" and that the government agreed to move to dismiss the ammunition count. The District Court accepted Gibbs' guilty plea.

After the guilty plea but before Gibbs' sentencing, the government changed its position. The government explained that, after reviewing the pleadings from Gibbs' previous convictions, it concluded that Gibbs had three prior felonies meeting the requirements for an enhancement under the

5

ACCA. By the government's count, the three § 924(e) "violent felony or a serious drug offense" convictions included a 2003 conviction for "aggravated menacing," a 2004 conviction for possession with intent to deliver cocaine, and a 2007 conviction in Delaware state court for wearing body armor while committing a felony. There was no dispute that the first two convictions are ACCA predicate offenses, but the government changed its position with respect to the 2007 conviction.

The government argued that wearing body armor while committing a felony was a serious drug offense under § 924(e) because the underlying felony was possession with intent to distribute cocaine. After Gibbs' guilty plea but before the sentencing hearing, the government informed Gibbs in a letter of its revised position. No longer did the government subscribe to its view in the plea agreement that "[t]he maximum penalties for this offense are 10 years [of] imprisonment." As a result, the government stated, it would not oppose a motion by Gibbs to withdraw his guilty plea before sentencing. But if Gibbs wished to proceed, the government would argue for the imposition of an enhanced sentence under the ACCA. Gibbs decided to proceed to sentencing, where he would argue that the body armor conviction was not an ACCA predicate offense.

At the sentencing hearing, the government argued that the District Court must take a closer look at Gibbs' 2007 conviction. The indictment charged him with two counts. The first stated that Gibbs "did knowingly wear body armor during the commission of a felony, Possession with Intent to Deliver Cocaine, as set forth in Count II of this indictment

6

which is incorporated herein by reference." (App. at 28.) Count II charged that Gibbs "did knowingly and unlawfully possess Cocaine . . . with the intent to deliver same," in violation of 16 Del. C. § 4751. (*Id.* at 28-29.) Gibbs pled guilty to the first count but not the second. In doing so, he engaged in the following colloquy:

> The Court: You are charged that on or about the 21st day of October 2006, in the County of New Castle, State of Delaware, you did knowingly wear body armor during the commission of a felony, the felony being Possession with Intent to Deliver Cocaine, in violation of Title 11 of the Delaware Code. Do you understand the crime as I've read it to you?
>
> The Defendant: Yes, ma'am.
>
> The Court: And how do you plead?
>
> The Defendant: Guilty.

(*Id.* at 51-52.) The government argued that, though Gibbs was not convicted of the drug charge, the body armor conviction was a serious drug offense.

After considering the government's changed position, the probation office released a revised presentence report concluding that Gibbs was not subject to an ACCA enhancement. The government objected, and the District

7

Court ruled in Gibbs' favor.[1] The Court stated that it could only look to the text of the statute and the fact of conviction. The Delaware body armor statute proscribes a person from "wear[ing] body armor during the commission of a felony." 11 Del. C. § 1449. The statute does not limit the underlying "felony" to drug-related felonies. The District Court concluded that "the substantive content of [Delaware's body armor statute] does not qualify it as a serious drug crime under the ACCA," (app. at 71) and held that Gibbs was not subject to the § 924(e) enhancement. The Court sentenced Gibbs to 72 months' imprisonment, and the government timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review the District Court's denial of the ACCA enhancement de novo because the government's appeal raises a pure question of law. *United States v. Henton*, 374 F.3d 467, 469 (7th Cir. 2004); *United States v. Jones*, 332 F.3d 688, 690-91 (3d Cir. 2003).

## III.

The government appeals the District Court's ruling that Gibbs' state body armor conviction is not an ACCA

---

[1] Gibbs objected that an ACCA enhancement was inconsistent with the terms of the plea agreement. The District Court did not rule on this objection because it held that the enhancement did not apply.

predicate offense. We start with the text of the ACCA. A state conviction qualifies as "a serious drug offense" if it is an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). There is no dispute that Gibbs' body armor conviction carried a maximum term of imprisonment of ten years or more, *see* 11 Del. C. §§ 1449 and 4205(b)(2) (carrying a statutory maximum of 25 years imprisonment). The issue is whether the body armor conviction "involv[ed]" manufacturing, distributing, or possessing, with intent to manufacture or distribute, a controlled substance.

Congress's use of the term "involving" expands the meaning of a serious drug offense beyond the simple offenses of manufacturing, distributing, and possessing a controlled substance. *See*, *e.g.*, *United States v. James*, 834 F.2d 92, 93 (4th Cir. 1987) (stating that "violations 'involving' the distribution, manufacture, or importation of controlled substances must be read as including more than merely crimes of distribution, manufacturing, and importation themselves"). The plain meaning of "involve" is "to relate closely" or to "connect closely." *United States v. McKenney*, 450 F.3d 39, 43 (1st Cir. 2006) (citing Webster's Third New International Dictionary 1191 (1993) and The American Heritage Dictionary 921 (4th ed. 2000), respectively). The definition of a serious drug offense should be construed to extend "§ 924(e) beyond the precise offenses of distributing,

9

manufacturing, or possessing, and as encompassing as well offenses that are related to or connected with such conduct." *United States v. King*, 325 F.3d 110, 113 (2d Cir. 2003). In adopting this position, we conform with all courts of appeals that have addressed the scope of the definition of a serious drug offense. *See United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008); *McKenney*, 450 F.3d at 42; *United States v. Alexander*, 331 F.3d 116, 131 (D.C. Cir. 2003); *King*, 325 F.3d at 113; *United States v. Brandon*, 247 F.3d 186, 191 (4th Cir. 2001).

Gibbs argues that § 924(e)(2)(A)(ii), defining the state offenses that are serious drug crimes, should be interpreted in light of § 924(e)(2)(A)(i), defining the federal offenses that are serious drug crimes. Section 924(e)(2)(A)(i) defines serious federal drug offenses by reference to three statutes: the Controlled Substances Act, 21 U.S.C. § 801 *et seq*.; the Controlled Substances Import and Export Act, 21 U.S.C. § 951 *et seq*.; and the Maritime Drug Law Enforcement Act, 46 U.S.C. § 7501-70508. Gibbs argues that the definition of state serious drug offenses should be limited to the types of crimes identified by the three federal statutes. In other words, Gibbs argues that subsection (ii) cannot include a broader range of offenses than subsection (i).

While both subsections relate to the same subject, there is no reason to think that subsection (i) should limit our construction of subsection (ii). If Congress wished to do this, it could have done so. In the federal "three strikes" law, 18 U.S.C. § 3559(c), Congress limited the definition of serious state drug crimes by defining it as, "an offense under State law that, had the offense been prosecuted in a court of the

10

United States, would have been punishable under section 401(b)(1)(A) or 408 of the Controlled Substances Act (21 U.S.C. 841(b)(1)(A), 848) or section 1010(b)(1)(A) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)(1)(A))." 18 U.S.C. § 3559(c)(2)(H)(ii). Congress explicitly limited the serious state drug offenses to the serious federal drug offenses. The ACCA did not take this approach. Instead, Congress used broad terminology – "involving" – to define the category of serious state drug offenses without limiting its scope to federal statutes. This means that Congress did not wish subsection (ii) to be limited to the same set of crimes listed in subsection (i).

Congress adopted a broad interpretation of "a serious drug offense" because it intended to define an "entire class of state offenses 'involving' certain activities, namely, 'manufacturing, distributing, or possessing with intent to manufacture or distribute' a controlled substance." *Alexander*, 331 F.3d at 131 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)). Congress did not point to specific statutes as it did in defining serious federal drug crimes by enumerating "the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46." 18 U.S.C. § 924(e)(2)(A)(i). Each state has different serious drug crimes and different definitions for similar crimes. Thus, Congress relied upon general language referencing the entire class of serious state drug offenses.

Congress used the term "involving" to carve the class of serious state drug crimes broadly. But there are of course limits to how wide we can construe this class. As the First

11

Circuit noted, "[n]ot all offenses bearing any sort of relationship with drug manufacturing, distribution, or possession with intent to manufacture or distribute will qualify as predicate offenses under ACCA. The relationship must not be too remote or tangential." *McKenney*, 450 F.3d at 45. We must therefore determine whether Gibbs' body armor conviction is related to or connected with manufacturing, distributing, or possessing, with intent to manufacture or distribute, a controlled substance or if it is too remote or tangential.

Of critical importance is what approach we take to this question. The District Court held that it could only examine the Delaware statute and the fact of conviction, thereby precluding an examination of the underlying indictment and plea colloquy. The government argues that we should adopt an approach that allows us to look to the underlying indictment and plea colloquy. The former approach has been termed the "formal categorical approach" and the latter the "modified categorical approach." Before we proceed, we must determine which approach is applicable in this case.

The ACCA generally requires that the sentencing court look only to the fact of conviction and not to the facts underlying the conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990). "Under the categorical approach, we must look only to the statutory definitions of the prior offenses, and may not consider other evidence concerning the defendant's prior crimes, including, the particular facts underlying a conviction." *Garcia v. Att'y Gen.*, 462 F.3d 287, 291 (3d Cir. 2006) (internal citations and quotation marks omitted). This interpretation derives from the language of § 924(e), which

refers only to "a person who . . . has three previous convictions," not to "a person who has *committed*[ ]three previous violent felonies or drug offenses." *Taylor*, 495 U.S. at 600 (emphasis added). The ACCA "most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct." *Id.*

Such a reading of the ACCA makes sense. Congress wished to avoid an approach allowing an examination of the underlying facts that "could force sentencing courts to hold mini-trials, hear evidence and witnesses and otherwise engage in a detailed examination of specific facts involved in the prior offense." *United States v. Preston*, 910 F.2d 81, 86 n.3 (3d Cir. 1990). "If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history." *Taylor*, 495 U.S. at 601. At the same time, there are occasions where a court must look beyond the mere fact of conviction and the statute at issue. For instance, "[s]tatutes phrased in the disjunctive may invite inquiry into the record of conviction if it is unclear from the face of the statute whether the conviction [is a qualifying offense]." *Garcia*, 462 F.3d at 292.

In recognition of the need to look beyond the mere fact of conviction in some cases, the Supreme Court developed the modified categorical approach to allow sentencing courts to look at the indictment or information and the jury instructions. *Taylor*, 495 U.S. at 602. The approach was adopted in the context of determining whether a state burglary conviction constituted a "violent felony" under the ACCA.

13

The simple fact of conviction may not provide enough information to determine whether a state burglary conviction is a predicate ACCA offense. Thus, the Court adopted a modified categorical approach for the "narrow range of cases where a jury was actually required to find all the elements of generic burglary." *Id.* These cases invite departure to determine which elements the jury had to find to convict someone of burglary.

> For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id*.

The modified categorical approach is not limited to prior violent felonies but also applies to determine whether a prior conviction was a serious drug offense. *See Vickers*, 540 F.3d at 364; *Brandon*, 247 F.3d at 188. In other words, the modified categorical approach applies broadly in the context of § 924(e). *See United States v. Bregnard*, 951 F.2d 457, 459 (1st Cir. 1991). Where a statute's language is ambiguous or disjunctive and, as a result, violation of the statute may and may not constitute an ACCA predicate offense, then the court may look to the indictment or jury instructions to determine which elements had to be proven to support a conviction. *See*

14

*Shephard v. United States*, 544 U.S. 13, 20 (2005) (stating that a court can look to the charging documents and "recorded judicial acts," like jury instructions, under the modified categorical approach). The modified categorical approach is limited to this "narrow range of cases." *Taylor*, 495 U.S. at 602. In *Brandon*, the Fourth Circuit stated,

> [The modified categorical approach] applies in cases where the state statute can be violated in several different ways, some of which would support enhancement under 924(e) and some of which would not. In those cases, the sentencing court may examine the indictment, other charging papers, or jury instructions to determine whether the defendant was charged with a crime that meets the requirements of section 924(e).

247 F.3d at 188. It is appropriate for us to apply the modified categorical approach in this case if the statute of conviction is ambiguous or disjunctive, thereby inviting inquiry into whether the conviction qualifies as a serious drug offense pursuant to § 924(e).

The Delaware body armor statute "can be violated in several different ways." *Id.* The statute merely proscribes a person from wearing body armor "during the commission of a felony," 11 Del. C. § 1449, but it leaves the underlying felony undefined. This use of the word "felony" incorporates by reference the disjunctive list of all felonies. We cannot determine from the face of the statute alone whether a violation is an ACCA predicate offense but must look to the

15

underlying facts of the conviction to determine if it is a violent felony or a serious drug offense. If the underlying felony was burglary, a violation of the body armor statute may constitute a violent felony. Likewise, if the underlying felony was manufacturing, distributing, or possessing a controlled substance, this may constitute a serious drug offense. In order to determine whether the body armor conviction is an ACCA predicate offense, one must look to the charging instrument or jury instructions. Applying the modified categorical approach in this context does not entail an "elaborate factfinding process regarding the defendant's prior offenses," *Taylor*, 495 U.S. at 601, and it does not "force sentencing courts to hold mini-trials." *Preston*, 910 F.2d at 86 n.3. All the approach requires is a determination of what the underlying felony was that the defendant committed while wearing body armor. Just as one must examine the indictment and jury instructions to determine if a state burglary conviction is an ACCA predicate offense, one must examine the indictment to determine if Gibbs' body armor conviction is an ACCA predicate offense. As such, the modified categorical approach should be applied in this case.

Under the modified categorical approach, we examine the indictment to find that the body armor charge states that Gibbs "did knowingly wear body armor during the commission of a felony, Possession with Intent to Deliver Cocaine, as set forth in Count II of this indictment which is incorporated herein by reference." (App. at 28.) We must determine whether Gibbs' offense as stated in the indictment meets the ACCA's definition of a serious drug offense. The question then becomes whether wearing body armor while

16

committing a felony, where that felony is possession of cocaine with intent to distribute, is related to or connected with "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," 18 U.S.C. § 924(e)(2)(A)(ii), or if it is too remote or tangential.

To determine whether a conviction is related to or connected with the particular conduct of manufacturing, distributing, or possessing a controlled substance, "courts follow the approach outlined in *Taylor* and ask whether the proscribed conduct is an inherent part or result of the generic crime of conviction . . . or, stated somewhat differently, whether the abstract crime intrinsically involves the proscribed conduct." *Brandon*, 247 F.3d at 191. Here, we must examine whether manufacturing, distributing, or possessing, with intent to manufacture or possess, a controlled substance is "an inherent part or result of the generic crime" of wearing body armor while committing a felony, where that felony is possession with intent to distribute cocaine. *Id.* We find that it is both.

First, the underlying felony is an inherent part of the offense of wearing body armor while committing a felony because the underlying felony must be proven in order to be guilty of the body armor offense. While it is true that the defendant need not be convicted of a drug offense, a person convicted under 11 Del. C. § 1449 has to be found guilty of some underlying felony. And where, as in this case, the felony is a drug crime, proof of the elements of a drug offense is required. *See Priest v. State*, 879 A.2d 575, 581 (Del. 2005) (construing an analogous statute proscribing "possession of a firearm during the commission of a felony").

17

In pleading guilty to the body armor offense, Gibbs pled guilty to the elements of possession with intent to distribute cocaine. Second, wearing body armor serves to promote and advance the underlying drug crime. The underlying felony is a result or effect of the proscribed conduct because wearing body armor makes it more likely that a felony will occur. Where the underlying felony is a drug crime, wearing body armor while committing a felony serves to promote and advance the drug crime. This establishes that a serious drug offense "is inherent in the generic conduct proscribed by the statute and alleged in the indictment underlying" Gibbs' conviction. *Id.* at 191-92. We, therefore, conclude that Gibbs' body armor conviction is a serious drug offense under the ACCA.

Gibbs argues that this interpretation of "a serious drug offense" raises a constitutional problem of fair notice. But our case law holds that a statute "violates due process of law if it 'either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application.'" *United States v. Woods*, 915 F.2d 854, 862 (3d Cir. 1990) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). The ACCA does not "forbid[] or require[] the doing of an act." It is a sentencing law and does not proscribe any conduct. *See United States v. Mack*, 229 F.3d 226, 331 (3d Cir. 2000) ("The ACCA is a sentence enhancement statute and does not create a separate offense."). Regardless, interpreting "serious drug offense[s]" to include the Delaware body armor conviction is hardly vague. Gibbs' offense was wearing body armor while possessing with intent to distribute

a controlled substance. It is not so vague or unexpected and does not betray fair notice to find that such an offense "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii).

IV.

We hold that Gibbs' body armor conviction is an ACCA predicate offense. The government argues that we need not remand to the District Court for a determination of whether the ACCA enhancement is in conformity with the terms of Gibbs' plea agreement. We disagree and believe there are material issues of fact that the District Court must resolve. For the foregoing reasons, we will vacate and remand to the District Court to rule on Gibbs' outstanding objection to the ACCA enhancement.