PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-1483
_____

UNITED STATES OF AMERICA

v.

DANTE TUCKER, a/k/a DANT

Dontey Tucker,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00440-10)

District Judge: Honorable R. Barclay Surrick

_____

Argued: November 1, 2012

Before: SLOVITER, AMBRO, and BARRY, Circuit Judges

(Filed December 21, 2012)

Richard A. Lloret, Esquire (Argued)
Office of United States Attorney
Philadelphia, PA19106
*Attorney for Appellee*

Paul M. George, Esquire (Argued)
McKinney & George
Philadelphia, PA 19107
*Attorney for Appellant*

———

OPINION

———


SLOVITER, Circuit Judge.

Dantey Tucker appeals the sentence imposed by the District Court following his conviction for violation of 18 U.S.C. § 922(g)(1) (2006). His appeal presents only one question: Whether Tucker's two prior Pennsylvania drug convictions qualify as "serious drug offenses" for purposes of sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (2006) ("the ACCA").

## I.    Background

In 2007, a federal grand jury indicted Tucker and twenty-one others with participating in a large-scale conspiracy to distribute cocaine, along with related drug and firearms offenses. In November of 2011, Tucker pled guilty to one count of possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He represented himself at the plea and sentencing hearings, assisted by appointed standby counsel.

Tucker and the government disagreed about Tucker's sentencing exposure. The government asserted that Tucker was subject to sentencing enhancement under the ACCA, which mandates a minimum sentence of fifteen years for persons convicted of § 922(g)(1) who have three prior convictions for "violent felonies" or "serious drug

2

offenses." *See* § 924(e).  The government alleged that Tucker had a 1995 Pennsylvania conviction that qualified as a "violent felony" and two prior Pennsylvania convictions for "serious drug offenses:" (1) a 1999 conviction, by bench trial, for possessing a controlled substance with intent to deliver ("PWID") in violation of 35 PA. STAT. ANN. § 780-113(a)(30); and (2) a 2002 conviction, by jury trial, for conspiracy to "sell drugs," a violation of 18 PA. CONS. STAT. ANN. § 903.  App. at 156-61.

Tucker conceded the "violent felony" but argued that his two state drug convictions did not qualify as "serious drug offenses" under the terms of the federal law. A "serious drug offense" is an offense

> involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii).  The government asserted that both of Tucker's drug convictions involved cocaine, and, under Pennsylvania law, carried a maximum term of imprisonment of ten years.  Tucker argued that neither conviction had required a finding as to the particular drug at issue.  Because maximum penalties vary according to the drug charged, he argued, the government could not show that either conviction was for an offense carrying a maximum sentence of ten years or more.  Tucker reserved his right to appeal any determination that he qualified for sentencing enhancement under the ACCA. The government, in turn, reserved its right to reinstate the original charges against Tucker if he should prevail on appeal.

3

At sentencing, the government introduced a series of state court documents as evidence that Tucker's prior convictions were convictions for cocaine: the certified court record for the 1999 PWID conviction and, with respect to the 2002 conspiracy conviction, charging documents, jury instructions, a transcript of the post-trial sentencing hearing, and a transcript of a pre-trial charging conference.[1] Based on its review of these documents and arguments by the parties, the District Court found that both of Tucker's prior convictions were for cocaine, and so qualified as "serious drug offenses" under the ACCA. It sentenced Tucker to fifteen years imprisonment.

Tucker appeals the District Court's determination that his 1999 and 2002 convictions constitute "serious drug offenses."

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "The question of what documents a district court may rely on to determine the nature of a prior conviction and the scope of a district court's authority to make factual findings are questions of law, which we review de novo." *United States v. Howard*, 599 F.3d 269, 271 (3d Cir. 2010) (internal citations omitted).

## III.     Analysis

### I.     The Modified Categorical Approach

---

[1] A federal probation officer had also prepared a pre-sentence investigation report that deemed Tucker eligible for sentencing enhancement under § 924(e). Tucker filed twenty-five objections to the report; several related to the enhancement issue.

Tucker agrees that if either his 1999 or 2002 conviction was for cocaine, it would qualify as an ACCA predicate. He argues, however, that neither conviction required a finding that cocaine was the drug at issue. Tucker contends that, therefore, neither can qualify as a "serious drug offense."

To decide whether Tucker's prior convictions qualify as "serious drug offenses" under the ACCA's enhancement provision, 18 U.S.C. § 924(e), we begin with the "categorical approach" announced in *Taylor v. United States*, 495 U.S. 575 (1990). In *Taylor,* the Supreme Court prohibited federal sentencing courts from inquiring into the facts underlying prior convictions, fearing that this would unleash endless re-litigation of old charges and raise Sixth Amendment concerns. *See id.* at 601-02. Instead, the categorical approach requires us "to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. We "may not consider other evidence concerning the defendant's prior crimes." *United States v. Gibbs*, 656 F.3d 180, 186 (3d Cir. 2011) (internal quotation and citation omitted). Only if the statutory definition of a prior offense meets all the elements of the "generic" federal predicate category does the conviction constitute a predicate offense. *See Taylor*, 495 U.S. at 598-99.

Under the categorical approach, neither of Tucker's prior convictions qualifies as a "serious drug offense," because in neither case does the statutory offense definition impose a maximum sentence of ten years or more. Rather, maximum penalties for both 35 PA. STAT. ANN. § 780-113(a)(30) (PWID) and conspiracy to "sell drugs" (conspiracy to violate § 780-113(a)(30)) depend on the controlled substance at issue. *See* §780-113(f); 18 PA. CONS. STAT. ANN. § 905. The statutory maximum for PWID cocaine or

5

conspiracy to sell cocaine is ten years imprisonment, but the statutory maximum for PWID marijuana (or conspiracy to sell marijuana) is only five. 35 PA. STAT. ANN. §§ 780-113(f), 780-104.[2]

When statutory offense definitions are inconclusive, however, *Taylor* authorizes later sentencing courts to look beyond the statutory language "in a narrow range of cases where a jury was actually required to find all the elements" of the federal predicate. 495 U.S. at 602. Such a conviction qualifies as an ACCA predicate only if "the charging paper and jury instructions *actually required* the jury to find all the elements of [the generic predicate offense] in order to convict the defendant." *Id.* (emphasis added).[3] When the prior conviction resulted from a plea, the sentencing court may look to the charging document and – in lieu of jury instructions – the plea agreement and plea colloquy, "or to some comparable judicial record," to determine if the defendant "necessarily admitted" all the elements of the ACCA offense. *Shepard v. United States*, 544 U.S. 13, 26 (2005). This limited inquiry into the necessary elements of a prior conviction has come to be known as the "modified categorical approach." *See, e.g.*, *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009).

---

[2] If Tucker had actually received a sentence of ten years for either conviction, it would clearly qualify as a "serious drug offense," but he did not: He received a sentence of fifteen to thirty months incarceration for his 1999 conviction and a sentence of two to four years incarceration for his conviction in 2002.

[3] As the Supreme Court later clarified, "[a]lthough *Taylor* involved prior burglaries . . . , our holding in *Taylor* covered other predicate ACCA offenses." *Shepard v. United States*, 544 U.S. 13, 17 n.2 (2005). *See also Gibbs*, 656 F.3d at 187 ("The modified categorical approach is not limited to prior violent felonies but also applies to determine whether a prior conviction was a serious drug offense.").

*Taylor* and *Shepard* designed the categorical / modified categorical approach in order to steer clear of Sixth Amendment concerns. *See Shepard*, 544 U.S. at 25-26 (plurality opinion) ("The rule of reading statutes to avoid serious risks of unconstitutionality therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict.") (internal citation omitted). So long as courts comply with the strict legal inquiry that *Taylor* and *Shepard* command, the Sixth Amendment is satisfied. *See James v. United States*, 550 U.S. 192, 214 (2007) (explaining that categorical approach entails statutory interpretation, not fact-finding, and thus "raises no Sixth Amendment issue").

Both parties agree that the modified categorical approach applies in this case.

## II.     The 2002 Conspiracy Conviction

Tucker's 2002 conviction arose from a trial by jury in Pennsylvania state court on three charges: (1) possession of a controlled dangerous substance ("crack cocaine, marijuana"), a violation of 35 PA. STAT. ANN. § 780-113(a)(16); (2) possession of a controlled dangerous substance with intent to deliver ("PWID") ("crack cocaine, marijuana"), a violation of 35 PA. STAT. ANN. § 780-113(a)(30); and (3) conspiracy to "sell drugs", a violation of 18 PA. CONS. STAT. ANN. § 903. App. at 156-61. The jury convicted Tucker of simple possession and conspiracy, but acquitted him on the PWID charge. Because simple possession is not an ACCA predicate, only the conspiracy conviction is at issue here.

7

The question before us is whether we can, within the limits of the modified categorical approach, conclude that Tucker was convicted of conspiracy to sell cocaine rather than marijuana. Because the conspiracy conviction resulted from a jury trial, *Taylor* controls. We must therefore determine whether "the charging paper and jury instructions actually required the jury to find" a conspiracy to sell cocaine in order to convict. 495 U.S. at 602.

The District Court considered two documents that fall outside of *Taylor*'s ambit: the transcripts of the charging conference and sentencing hearing. *See Nijhawan*, 557 U.S. at 35 (2009) (noting that modified categorical approach limits courts to "the indictment or information and jury instructions" in the case of a jury trial) (internal quotation marks omitted). To the extent of its reliance on the charging conference and sentencing hearing transcripts, the District Court erred.[4] We begin our own analysis with the charging paper and jury instructions for the offense at issue – the conspiracy charge.

The Bill of Information and jury instructions on the conspiracy charge never mentioned cocaine at all. According to the Bill of Information, the alleged object of the conspiracy was to "sell drugs"; the alleged overt act was "PWID." App. at 161. The instructions tracked the language of the Bill:

> The Information alleges that the defendant conspired with certain other persons….
> The Information alleges that the crime was to sell drugs and that was the object of
> the conspiracy. The Information alleges that the following were overt acts in this
> case: Possessing drugs with the intent to deliver them.

---

[4] The government frankly concedes that the charging conference "should not be considered in determining if the conspiracy offense was a serious drug offense under Section 924(e)," Appellee's Br. at 16 n.7, and has implicitly conceded that the sentencing transcript should not be considered either by omitting it from argument on appeal.

App. at 170. The judge further instructed the jury that "[i]n order to find the defendant guilty of conspiracy to sell drugs," it had to find that three elements had been proven beyond a reasonable doubt: "First, that the defendant agreed with other persons that one or more of them" would sell "drugs"; "[s]econd, that the defendant and the other person intended to promote or facilitate the selling of controlled substances"; and "third, that the defendant or the other persons did the acts that are alleged to have been overt acts and did them in furtherance of their conspiracy." App. at 170.

On the basis of the charging paper and jury instructions for the conspiracy count, the conspiracy conviction could not qualify as a "serious drug offense." This is undisputed. It is arguable that the inquiry ends here. *Taylor*'s language, limiting courts' review to "*the* charging paper and jury instructions," 495 U.S. at 602 (emphasis added), ostensibly refers to a specific charging paper and jury instructions – those for the offense of conviction. Nothing in *Taylor* invites review of other charging papers or instructions for other offenses. This court's precedent, moreover, is emphatic that "a court applying the modified categorical approach may only consider the charging document to the extent that the petitioner was actually convicted of the charges." *Evanson v. Att'y Gen.*, 550 F.3d 284, 293 (3d Cir. 2008).

The government argues, however, that the charging paper and jury instructions for one charge may inform the meaning of other charges in the same trial, such that they must be considered as a whole. Assuming *arguendo* that *Taylor* does authorize us to

9

review them,[5] we will consider whether the other charging papers or instructions in the case "actually required" the jury to find that cocaine was the object of the conspiracy in order to convict Tucker on the conspiracy charge.

The possession and PWID Bills of Information charged Tucker with two controlled substances – "crack cocaine, marijuana." App. at 157, 159. The instructions on those counts mentioned only cocaine. For both the possession and the PWID counts, the judge instructed the jury that Tucker was charged with possessing a "controlled substance"; that the term controlled substance "includes crack cocaine"; and that "[i]n order to find the defendant guilty" on either the possession or PWID charge, the jury must find beyond a reasonable doubt "that the defendant possessed crack cocaine, a controlled substance" (and for the PWID charge, that he also "possessed that substance with the intent to deliver.") *Id.* at 168-69. The judge also explained that "drugs" was synonymous with "controlled substances."

---

[5] It is not clear that *Taylor* authorizes so broad a sweep. The government points us to due process cases in which we have held it our duty to "consider the totality of the instructions," *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006) (internal quotation marks omitted), but this prescription usually applies to instructions on a single charge or indictment. *E.g. United States v. Weatherly*, 525 F.3d 265, 269-71 (3d Cir. 2008) (single charge); *Leahy*, 445 F.3d at 650-51 (single indictment); *United States v. Lee*, 359 F.3d 194, 205 (3d Cir. 2004) (single indictment). The present case contains separate charges filed by separate bills of information. Furthermore, the scope of our due process review does not dictate the scope of a modified categorical analysis, which has a more limited horizon. Other courts of appeal have limited the modified categorical analysis to the portions of the relevant documents relating to the disputed offense. *See Aguilar-Turcios v. Holder*, 691 F.3d 1025, 1037 (9th Cir. 2012) ("[U]nder the modified categorical approach, we consider only those sections of the *Shepard* documents that pertain to the specific conviction or convictions" at issue); *Jaggernauth v. United States Att'y. Gen.*, 432 F.3d 1346, 1355 (11th Cir. 2005) ("We can find no authority . . . that permits the combining of two offenses to determine whether one or the other is [a federal generic offense].").

10

These instructions do not change the elements of the conspiracy charge. The government argues that these instructions define "drugs" and "controlled substances" to mean "cocaine only" for purposes of all charges. This is simply not the case. To say that "controlled substance" *includes* cocaine does not limit either "controlled substances" or "drugs" to cocaine. Nor does making cocaine a necessary element of some charges render it a necessary element of others. If anything, listing cocaine as an element of the first two charges and omitting it from the third suggested that cocaine was not a required element of the conspiracy.

More abstractly, the government suggests that by omitting any reference to marijuana, the instructions excluded marijuana from the case. We disagree. Tucker was charged with marijuana in two Bills of Information. (We note that the prosecutor amended the Bills of Information on the day of trial – to alter the date of the conduct alleged – but did not remove the charged "marijuana." App. at 157, 159, 161.) The charging papers reflect the parameters of possible evidence. Given that Tucker was charged with marijuana and the conspiracy instructions never limited the term "drugs" to any particular controlled substance, we cannot find that marijuana was legally excluded from the jury's consideration of that charge.

The government's second argument is that the conspiracy charge incorporated the separate PWID cocaine charge as the overt act. Once again, this is simply not true. We note, first, that Tucker was acquitted of the PWID cocaine charge. The government contends that the acquittal is irrelevant; the jury was only required to find that some conspirator – not necessarily him – committed the overt act in order to convict Tucker of

11

the conspiracy. And according to the government at oral argument, "the overt act [was] defined as possessing with intent to deliver crack cocaine."

The government misstates the record. The overt act was not defined in terms of crack cocaine. In the Bill of Information, the overt act was defined only as "PWID." App. at 161. In the jury instructions, it was defined as "[p]ossessing drugs with the intent to deliver them." App. at 170. Neither the charging document nor the jury instructions ever defined the overt act as PWID cocaine, or equated it with the separately charged PWID. By contrast, in *Gibbs* we found that one count did incorporate another where the Bill of Information charged Gibbs with "wear[ing] body armor during the commission of a felony, *Possession with Intent to Deliver Cocaine, as set forth in Count II of this indictment which is incorporated herein by reference*." 656 F.3d at 183 (emphasis added) (internal quotation marks omitted). In Tucker's case, neither the conspiracy Bill nor the conspiracy instructions incorporated the separate PWID charge. The jury could legally have found the overt act to be possession of marijuana with the intent to deliver. Nothing "actually required" the jury to treat the separate PWID cocaine charge as the overt act.

Finally, the theme of the government's various arguments is that, given the instructions as a whole, the jury almost certainly convicted Tucker of conspiracy to sell cocaine rather than marijuana. We do not disagree. The problem is that *Taylor*'s inquiry is not whether the jury almost certainly found the element at issue. The question is whether the jury was "actually required" to find it – "necessarily had" to – in order to convict. *Taylor*, 495 U.S. at 602. "[U]nder *Taylor* it does not matter what facts the jury

12

actually found but rather what facts the jury was 'actually *required* to find.'" *United*

*States v. Aguila-Montes de Oca*, 655 F.3d 915, 928 (9th Cir. 2011) (quoting *Taylor*, 495

U.S. at 602), abrogated on other grounds by *Young v. Holder*, 697 F.3d 976 (9th Cir.

2012) (emphasis in original).  It is a technical legal inquiry designed to preempt factual

speculation about what a jury thought.  *See Taylor,* 495 U.S. at 601 (aspiring to prevent

an "elaborate factfinding process regarding the defendant's prior offenses"); *United States*

*v. Preston*, 910 F.2d 81, 85 n.3 (3d Cir. 1990) (noting that *Taylor* rejected fact-specific

approach to ACCA that "could force sentencing courts to hold mini-trials, hear evidence

and witnesses and otherwise engage in a detailed examination of the specific facts

involved in the prior offenses").

　　For all its textual exegesis, the government cannot point to any place in the

instructions where the Pennsylvania trial judge told the jury that it must find a conspiracy

to sell *cocaine* in order to convict Tucker on the conspiracy charge.  The judge never did.

Nor did she tell the jury that "drugs" did not include marijuana.  And contrary to the

government's representations, she never said that the overt act alleged was PWID

*cocaine*, only possessing "drugs" with the intent to deliver.  A verdict based on marijuana

would not have been contrary to law.

　　As we have sometimes phrased it, we apply the modified categorical approach "in

order to determine the least culpable conduct sufficient for conviction." *Jean-Louis v.*

*Att'y Gen.*, 582 F.3d 462, 466 (3d Cir. 2009).  Thus, in *United States v. Richardson*, 313

F.3d 121 (3d Cir. 2002), we concluded that a juvenile adjudication – for robbery and

other offenses – did not qualify as an ACCA "violent felony" because the finder of fact

13

"did not 'necessarily' have to find" that the incident involved a weapon in order to adjudge the defendant guilty. *Id.* at 128. It was irrelevant that a weapon had almost certainly been involved. *See id.* at 127. In that case, the least culpable conduct sufficient for conviction was robbery with no weapon. Here, it is conspiracy to sell marijuana. Neither the charging paper nor the jury instructions required Tucker's jury to find anything more in order to convict.[6]

*Taylor* chose to foreclose any speculation whatsoever on terrain shadowed by Sixth Amendment concerns. Because the charging document and jury instructions did not "actually require" the jury to find a conspiracy to sell cocaine in order to convict Tucker of conspiracy to "sell drugs," the 2002 conspiracy conviction does not qualify as a "serious drug offense" under the ACCA. The District Court erred in concluding otherwise.

We do not reach Tucker's Sixth Amendment argument with respect to this conviction, as we reverse on the basis of the modified categorical approach.

### III. The 1999 PWID Conviction

---

[6] The cases in which we have held a prior conviction to constitute an ACCA predicate present a clear contrast. *See United States v. Marrero*, 677 F.3d 155, 162 (3d Cir. 2012) (prior conviction was "violent felony" where plea colloquy required defendant to admit elements of intentional assault as basis for plea); *Gibbs*, 656 F.3d at 187-88 (conviction was "serious drug offense" where charging paper required defendant to admit to PWID cocaine as element of charge); *United States v. Jones*, 332 F.3d 688, 693-94 (3d Cir. 2003) (offenses for which juvenile was adjudicated delinquent did "require" judge to find all elements of "violent felony"); *United States v. Preston*, 910 F.2d 81, 85-87 (3d Cir. 1990) (conspiracy conviction was "violent felony" where jury "was required to find that a violent felony [robbery] was the object of the conspiracy" because charging document "plainly show[ed] this charge").

14

Tucker was convicted in 1999 of violating 35 PA. STAT. ANN. § 780-113(a)(30) [the "PWID" statute], which prohibits

> the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

At Tucker's federal sentencing, the parties agreed that a conviction for PWID cocaine would qualify as a "serious drug crime." The government introduced the certified court record for the case. The Bill of Information listed "cocaine" as the substance charged, Supp. App. at 19, and the record showed that Tucker was "adjudged guilty" at a bench trial. *Id*. at 18.

Tucker makes only one argument with respect to this conviction: that the District Court's determination that it was for cocaine violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the Sixth Amendment. The Sixth Amendment analysis turns on whether the District Court complied with the modified categorical approach. *James*, 550 U.S. at 214. If the District Court's determination about the 1999 PWID conviction satisfied *Taylor* and *Shepard*, it raises no Sixth Amendment concern. *Id.*

Applying the modified categorical approach to a prior conviction by bench trial, the sentencing court may consider the charging papers and, in lieu of jury instructions, the trial judge's rulings of law and findings of fact. *Shepard*, 544 U.S. at 14. Charging papers alone are determinative only if they show "that the [fact-finder] necessarily had to find the elements" of the federal predicate in order to convict." *Richardson*, 313 F.3d at 127 (internal quotation marks and emphasis omitted). "[A]n enhancement cannot be

based solely on an allegation in the charging document when the conviction for the charged offense or offenses could have been obtained without that allegation having been proved." *Id.* at 127-28.

The Bill of Information in this case specifies that the drug charged was cocaine. Tucker argues that, even so, the trial judge did not have to make a finding of cocaine in order to convict. Tucker cites *Commonwealth v. Kelly*, 409 A.2d 21 (Pa. 1979), which upheld Kelly's conviction for possession of a controlled substance despite the fact that the Commonwealth had alleged possession of heroin but proven possession of methamphetamine instead. On the basis of *Kelly*, Tucker contends that the trial judge could have convicted him for any drug at all. This argument does not follow. *Kelly* simply held that the variance in that case between the charge and the proof at trial was not so prejudicial as to warrant reversal of Kelly's conviction. *Id.* at 23. *See also, e.g.*, *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989) (noting that federal conviction should be vacated only when variance between indictment and proof "prejudices a substantial right of the defendant"). The fact that some variances are deemed harmless does not mean that fact-finders are free to convict on uncharged grounds.

To the contrary: The Pennsylvania Rules of Criminal Procedure require that an information contain "a plain and concise statement of the essential elements of the offense," Pa. R. Crim. P. 560(B)(5), and establish that "[i]n all court cases tried on an information, the issues at trial shall be defined by such information." Pa. R. Crim. P. 560(D). "An indictment is the star and compass of a criminal trial." *Commonwealth v. Lambert*, 313 A.2d 300, 301 (Pa. Super. Ct. 1973) (internal quotation marks omitted).

16

"'In criminal trials the proof offered by the Commonwealth must measure up to the charge made in the indictment.'" *Id.* (quoting *Commonwealth v. Aurick*, 19 A.2d 920, 924 (1941)).[7]

Because Tucker was specifically charged with PWID cocaine, the trial judge was "actually required" to find that Tucker possessed cocaine in order to convict. Possession (or manufacture, or delivery) of a "controlled substance" is an element of the offense; to prove it, the prosecution must prove that the substance in question was one of those enumerated in Pennsylvania's controlled substance schedules, *see* 35 PA. STAT. ANN. § 780-104; and, in this case, the Bill of Information limited the proof to cocaine.[8] Because the trial judge was actually required to find Tucker guilty of PWID cocaine in order to convict, Tucker's 1999 conviction qualifies as a serious drug offense.

Our precedent compels this conclusion. In *United States v. Preston*, 910 F.2d 81 (3d Cir. 1990), we held that Preston's state conspiracy conviction qualified as a "violent felony" under the ACCA because "[t]he information papers filed in the trial court plainly show[ed]" that the object of the charged conspiracy was robbery, and "the jury was required to find" that object in order to convict. *Id.* at 86-87. *Shepard* itself affirmed that "the details of a generically limited charging document . . . in any sort of case" are

---

[7] This principle derives from the Sixth Amendment of the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution, each of which affords an accused person the right to be notified of the charges against him. Due process requires that the notice "set forth the alleged misconduct with particularity." *In re Gault*, 387 U.S. 1, 33 (1967) (internal quotation marks omitted).

[8] This is not to say that a variance of proof at trial would warrant automatic reversal, *see Kelly*, 409 A.2d at 23, but it would at least give rise to a colorable claim of error.

17

sufficient to establish a predicate. 544 U.S. at 21. *See also id.* at 25 (plurality opinion) (noting that a bench trial judge's findings and rulings are necessary to confirm the factual basis of a conviction "*without a charging document that narrows the charge to generic limits*") (emphasis added). Other circuit courts of appeal have agreed. *See, e.g.*, *United States v. Vinton*, 631 F.3d 476, 486 (8th Cir. 2011) ("A precisely drawn charging document can indicate the basis for conviction….").

Because the District Court complied with the modified categorical approach in determining that the 1999 PWID conviction constituted an ACCA predicate, it "raises no Sixth Amendment issue." *James*, 550 U.S. at 214. We deny Tucker's claim with respect to this offense.

### IV.    Conclusion

"The daunting practical difficulties and the due process and Sixth Amendment concerns that surface when a sentencing court makes factual determinations concerning a defendant's prior convictions highlight the necessity of strict adherence to the categorical approach prescribed by *Taylor*." *Richardson*, 313 F.3d at 128. *Taylor* limits the inquiry into Tucker's 2002 conspiracy conviction to the offense statute itself, the charging paper and the jury instructions. Because none of these documents "actually required" the jury to find a conspiracy to sell cocaine in order to convict – however likely it is, as a factual matter, that they did – *Taylor* prohibits classifying that conviction as a serious drug offense. We therefore vacate Tucker's sentence and remand for resentencing in accordance with this opinion.