NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4611
_____

UNITED STATES OF AMERICA

v.

ELIJAH BROWN, JR.,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-12-cr-00243-02)
District Judge:  Hon. Sylvia H. Rambo

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 17, 2015

Before:  FISHER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: September 30, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Elijah Brown, Jr. asks us to reverse orders of the United States District Court for

the Middle District of Pennsylvania denying his motion to suppress a gun seized during a

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

search of his residence and sentencing him to a term of 150 months' imprisonment. We will affirm.

## I. BACKGROUND[1]

### A. FACTUAL BACKGROUND

On July 13, 2012, Tamela Corish and Rodney Nicholson – who were driving in separate cars – stopped at a gas station in Harrisburg, Pennsylvania. A green SUV pulled up to the station and one of the passengers jumped out and drove away in Corish's car. Corish and Nicholson chased the stolen vehicle and the green SUV. Eventually, the green SUV parked in the 1600 block of Park Street. A passenger got out of the SUV and pointed a gun at Corish and Nicholson and told them to leave. Investigators learned that the registered owner of the SUV, Robert Hearn, was staying at 1624 Park Street. Detective Christopher Krokos of the Harrisburg Bureau of Police interviewed Hearn later that day, and Hearn told him that Elijah Brown, his neighbor living next door at 1622 Park Street, had been driving the SUV the night before.

After Brown was identified as a suspect, Krokos went to 1622 Park Street and encountered Brown on the front porch. While Krokos was speaking with Brown, Brown's mother came out of the house and Krokos told her not to return inside. He advised her and Brown that he planned to obtain a search warrant, and other officers, including now-Harrisburg Police Chief Thomas Carter, arrived to secure the scene. The remaining occupants of the house were asked to leave. The officers did not remove those

---

[1] In reviewing the denial of a motion to suppress, "we construe the record in the light most favorable to the government." *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012).

occupants but, instead, Brown's mother retrieved them and they voluntarily left the residence.  The police advised all the occupants that they were free to go but they could not re-enter the house.  At the suppression hearing, Brown's mother acknowledged that the police did not detain her, but that she "wasn't going to leave [her] house."

Eventually, Brown, who was sitting on the front porch of the house and was still free to leave, called Carter over to speak to him.  Brown and Carter stepped just inside the front door for privacy and Brown told Carter that there was a gun in his bedroom on the third floor of the house between the mattress and the pillows.  Brown told Carter that the police did not have to get a search warrant and that he would give consent for the officers to search the room for the gun. The firearm, a Ruger 9mm handgun, and a magazine with 12 rounds of ammunition were found in Brown's bedroom shortly thereafter, located exactly where Brown had described.  Once the firearm was recovered, Brown was arrested, read his *Miranda* warnings and transported to the police station.  Brown then told Krokos that the gun belonged to the perpetrator of the carjacking, Carlos Hill, and that Brown had hid the gun in his bedroom.

### B.    PROCEDURAL HISTORY

On September 26, 2012, a grand jury in the Middle District of Pennsylvania returned a two-count indictment against Brown, and co-defendant Hill.  Brown and Hill were each charged with possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)

& 924(e), and possession of a stolen firearm, 18 U.S.C. §§ 922(j) & 924(a)(2).[2]  Brown

filed a motion to suppress the handgun and his post-arrest statement.  The District Court

conducted a suppression hearing and issued an opinion denying the motion.  Brown then

pleaded guilty to a one-count information charging possession of a firearm by a convicted

felon.  18 U.S.C. §§ 922(g)(1) & 924(a)(2).  The plea agreement provided that Brown

could appeal the determination of his suppression motion and also allowed Brown to

appeal any sentence exceeding 120 months' imprisonment.  The District Court advised

Brown during the plea colloquy that if he was subject to the Armed Career Criminal Act

(the "ACCA"), 18 U.S.C. § 924(e), the penalties would increase from a statutory

maximum of ten years to a mandatory minimum of fifteen years up to a lifetime of

imprisonment.

On November 20, 2014, the District Court conducted a sentencing hearing.  The

District Court concluded that Brown was an Armed Career Criminal and sentenced him

to 150 months in prison.  Brown timely appealed.

---

[2] On March 8, 2013, Hill filed a motion requesting bifurcation, which was granted
by the District Court. On March 13, 2013, a jury convicted Hill of being a felon in
possession of a firearm.

## II.  DISCUSSION[3]

### A.  THE MOTION TO SUPPRESS

Brown claims that the District Court erred in denying his motion to suppress the handgun obtained as a result of the warrantless search of 1622 Park Street.  Although the Fourth Amendment to the United States Constitution generally forbids warrantless entry into and search of a person's home, consent is a well-established exception to the warrant requirement imposed by that amendment.  *See United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009).  "To justify [entry and] search based on consent, the [g]overnment 'has the burden of proving that the consent was, in fact, freely and voluntarily given.'"  *Id.* at 277-78 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)).  The voluntariness of consent is evaluated based on the totality of the circumstances.  *Id.* at 278.  "Both the characteristics of the accused and the details of the interrogation are useful to determine whether, under all the circumstances, [] consent to search was voluntary, and no case should turn on the presence or absence of a single controlling criterion."  *Id.* (internal quotation marks and brackets omitted).  Factors to consider

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a district court's denial of a motion to suppress evidence, *United States v. Mallory*, 765 F.3d 373, 381 (3d Cir. 2014), but we review the court's factual findings, including a finding that a defendant's consent to search was voluntary, for clear error, *United States v. Kim*, 27 F.3d 947, 954-55 (3d Cir. 1994); *accord Mallory*, 765 F.3d at 381.  Because he did not object below, we review Brown's challenge to the procedural reasonableness of his sentence for plain error.  *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014).  We review de novo a pure legal challenge to the application of the ACCA enhancement.  *United States v. Gibbs*, 656 F.3d 180, 184 (3d Cir. 2011).

include: "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; [] the use of physical punishment[;] … . [and] the setting in which the consent was obtained and the parties' verbal and non-verbal actions." *Id.* (internal quotation marks and brackets omitted).

Here, the District Court concluded that Brown voluntarily initiated the conversation with Carter; that he was not detained or physically restrained at any time; and that there were "no indicia that Chief Carter intimidated or otherwise coerced [Brown]'s statement."[4] (App. at 182.) The District Court found that Brown and the other occupants of the house were free to leave at all times, *id.*, and the officers described the atmosphere as "cooperative" and "relaxed." (App. at 58, 94.) The District Court concluded, given those circumstances, that the consent was completely voluntary and that conclusion is not clearly erroneous.[5] *Cf. Price*, 558 F.3d at 278 (consent was voluntary

---

[4] That Brown was not allowed back into the house does not vitiate the voluntariness of his consent. Indeed, "consent to search can be voluntary – and therefore Fourth-Amendment-compliant – notwithstanding the fact that it was given while a defendant was in custody without having received *Miranda* warnings." *United States v. Renken*, 474 F.3d 984, 987-88 (7th Cir. 2007); *cf. United States v. Watson*, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search.").

[5] Brown claims that the District Court's factual findings are clearly erroneous because the testimony of various Harrisburg police officers at the suppression hearing conflicted with testimony that they gave at co-defendant Hill's jury trial. But, Brown never pointed out those inconsistencies to the District Court, nor did he offer any argument about them. Accordingly, that argument has been forfeited. *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances. ... Therefore, in the context of a

6

where the consenter "was an adult, apparently of average intelligence, who had previous experience with the criminal justice system"; "the atmosphere surrounding the encounter was not hostile"; "the officers did not have their guns drawn when they asked for … consent"; "[the consenter] was not verbally or physically threatened"; and "only two officers … discussed … initial consent … in the driveway").

## B.  REASONABLENESS OF BROWN'S SENTENCE

Brown challenges his sentence as procedurally unreasonable, arguing that, in sentencing him to a below-guidelines term of imprisonment, the District Court did not adequately address all of the arguments raised by counsel and, thus, erred.[6]  When determining an appropriate sentence, a district court must follow our well-established process: (1) correctly calculate the applicable advisory guidelines range; (2) rule on any departure motions; and (3) consider the relevant factors under 18 U.S.C. § 3553(a).

---

motion to suppress, a defendant must have advanced substantially the same theories of suppression in the district court as he or she seeks to rely upon in this Court.").  And, even if we were to excuse Brown's forfeiture, the argument would still fail because he has not shown how inconsistencies that are unrelated either to the voluntariness of the consent or even to the search itself would affect the outcome here.

[6] Brown and the government entered into a plea agreement, under which the government agreed to seek a 120-month period of incarceration and Brown agreed to relinquish his appeal rights (unless he received a sentence in excess of that period).  The United States Probation Department, however, determined that Brown was subject to the ACCA enhancement and, as a result, he was subject to a mandatory minimum of 180 months' incarceration.  The District Court found that the enhancement applied, but granted a departure and sentenced Brown to a period of 150 months' incarceration, which is below the statutory mandatory minimum.  *Cf. United States v. Reevey*, 631 F.3d 110, 113 (3d Cir. 2010) (holding that a district court must impose at least the statutory mandatory minimum unless it grants a downward departure (1) for substantial assistance to the government or (2) under the so-called safety-valve provision of 18 U.S.C. § 3553(f)).

*United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). A sentence must be both procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). Brown challenges only the procedural reasonableness of his sentence. In reviewing a district court's sentence for procedural reasonableness, we consider, as relevant here, whether the court failed to consider the § 3553(a) factors or failed to explain its chosen sentence. *Id.*

Here, Brown essentially claims that, even though the District Court gave him a below-guidelines sentence, it failed to give consideration to his "history of abuse and addiction coupled with [his] newly demonstrated determination to tackle those crime-driving issues." (Opening Br. at 28-29.) We disagree. As Brown acknowledges, he "indisputably committed a serious offense and has a substantial prior record." (Opening Br. at 28.) The District Court recognized that it was not bound by the Guidelines and imposed a sentence below the Guidelines suggested range. The Court explained that it weighed Brown's substantial criminal history, the need to protect the public, and his individual characteristics, and concluded that a sentence somewhat below the Guidelines was appropriate. On this record, that was sufficient. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (district court's reasoning must "satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis" for its decision and that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation"); *United States v. Kluger*, 722 F.3d 549, 567 (3d Cir. 2013) ("[T]he court does not need to 'discuss and make findings as to each of the

8

§ 3553(a) factors if the record makes clear the court took the factors into account in sentencing.'"). Accordingly, Brown has not shown any procedural error.[7]

## III.  CONCLUSION

For the forgoing reasons, we will affirm the judgment and sentence of the District Court.

---

[7] Brown also challenges the application of the ACCA as a violation of his Fifth and Sixth Amendment rights because the predicate convictions were "neither charged in the indictment nor proved to a jury beyond a reasonable doubt." (Opening Br. at 34.) As he acknowledges, however, that claim was not raised before the District Court and is foreclosed by existing precedent. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *United States v. Blair*, 734 F.3d 218, 227 (3d Cir. 2013). On appeal, Brown challenges only the constitutionality of the ACCA and does not contest that his prior convictions qualify as ACCA predicates, although he apparently did so below.